In the Matter of CASTLE TIRE CENTER, INC., Debtor.

Stanley G. MAKOROFF,
Trustee, Plaintiff,

v.

BUTLER TIRE CENTER, Butler Tire Mart, Discount Tire Mart, Inc., and Butler Tire Center, Inc., Defendants.

Bankruptcy No. 83–1914.
Adv. No. 83–1540.

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 6, 1986.

Mark Glosser, Pittsburgh, Pa., for trustee.

John P. Vetica, Jr., Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

The matter presently before the Court is the Trustee's Complaint to Compel Turnover of Assets, Set Aside Fraudulent and/or Preferential Transfer, and to Compel Accounting. The issue before the Court is whether the Debtor's return of consigned goods to the consignor within ninety days before filing a bankruptcy petition constitutes a preferential transfer.

For the reasons hereinafter set forth, the Court finds that a preferential transfer occurred with respect to four thousand one hundred fourteen dollars and fifty-four cents.

The parties have stipulated the following relevant facts, *inter alia:*

a) Castle Tire Center, Inc. (hereinafter "Debtor") is a retail seller of tires and a customer of wholesaler, Butler Tire Center (hereinafter "Butler").

b) On or about November 23, 1982, the parties entered into a Consignment Agreement wherein the parties agreed that tires would be shipped from Butler to the Debtor at regular intervals, but that at no time would the transmittal be construed as a sale. Title to the tires was to remain in Butler; however, Debtor would have the right to sell same for a sum no less than the invoice price. A report and remission was to be made from Debtor to Butler every ten days, and, upon demand, delivery to Butler would be made of all unsold tires.

c) In July of 1983, the parties parted from the Consignment Agreement, whereupon Butler attempted to collect payment from Debtor. On or about August 17, 1983, Debtor advised Butler that it could no longer pay for the merchandise and requested that Butler repossess the merchandise. Pursuant to the request, Butler removed all of its inventory from Debtor's place of business. Butler issued to Debtor credit memos in the amount of $13,789.95. The parties agreed that the value of merchandise claimed by the Trustee is $4,114.54. This amount represents the value of merchandise delivered to Debtor more than forty-five days before the repossession which occurred within ninety days of the filing of the bankruptcy.

d) The parties stipulated that, if called at trial, Butler's witness, the president of a competitor tire company, would have testified that he was aware of the fact that Butler had consigned

goods in the general inventory of Debtor and that Debtor was known by the witness to be substantially engaged in selling the goods of others. This witness also would have testified that, in his additional capacity as a sales representative for another of Debtor's creditors, he knew that Debtor was substantially engaged in selling the goods of others.

e) The parties stipulated that there were no signs or notices displayed at the Debtor's place of business advising the public that merchandise was being sold on a consignment basis. The parties also stipulated that no financing statements or security agreements relating to the merchandise in question had been filed.

■ Section 547 of the Bankruptcy Code sets forth five conditions which must be met in order to find a preferential transfer. 11 U.S.C. § 547.

1. *The transfer must be to, or for, the benefit of a creditor.* 11 U.S.C. § 547(b)(1).

The parties stipulated that in July of 1983, they parted from the Consignment Agreement and that on August 17 and August 18, 1983, Butler removed all of its inventory from the possession of Debtor. There can be no dispute that a transfer from Debtor to Butler occurred.

Clearly, Butler benefited from repossession as without it, Butler would not have been paid, according to the facts as stipulated by the parties.

Lastly, Butler was a creditor as Debtor had a clear obligation to either return the merchandise or pay for same.

2. *The transfer must be for, or on account of, an antecedent debt owed by Debtor before the transfer was made.* 11 U.S.C. § 547(b)(2). At the time the merchandise was delivered, an invoice was transmitted, evidencing the creation of a debt. Furthermore, according to the facts as stipulated, repossession occurred because Debtor was unable to pay for the merchandise. Moreover, Butler's issuance of credit memos after repossession is consistent with the finding that a debt existed. Thus, the transfer of merchandise was for, or on account of, an antecedent debt.

3. *The transfer must have been made when the debtor was insolvent.* 11 U.S.C. § 547(b)(3). Debtor's schedules establish that on the day of filing of the bankruptcy petition, Debtor's unsecured liabilities totaled $166,453.78 and its assets totaled $47,047.61. Clearly, the Debtor was insolvent.

Butler and Debtor stipulated that Butler's representative, if called at trial, would have testified that he did not know that Debtor was considering filing a bankruptcy petition at the time Debtor told Butler to repossess the merchandise. The determination of the existence of reasonable cause to believe that Debtor was insolvent at the time of the transfer must be done on a case by case basis. *In re Gruber Bottling Works, Inc.*, 16 B.R. 348, 352 (Bankr.E.D. Pa., 1982). In the matter at bar, the Court finds that Butler had "notice of facts that would lead a prudent businessman to conclude the Debtor is insolvent." *In re Frigitemp Corp.*, 34 B.R. 1000, 1004 (S.D. N.Y., 1983). The parties stipulated that Butler repossessed *all* merchandise from Debtor, without substituting other merchandise as provided in the parties' agreement, because Debtor could not satisfy Butler's demand for payment. Therefore, the Court finds that Butler had reasonable cause to believe that Debtor was insolvent at the time of the transfer. This fact, coupled with the finding of actual insolvency, leads the Court to conclude that the requirement of section 547(b)(3) has been met.

4. *The transfer must have been made during the ninety days immediately preceding the commencement of the case.* 11 U.S.C. § 547(b)(4)(A). In fact, the transfer occurred August 17, 1983, and the Petition in Bankruptcy was filed September 1, 1983.

5. *The transfer must enable the creditor to receive a greater percentage of his claim than would be provided under the*

*distributive provisions of the Bankruptcy Code.* 11 U.S.C. § 547(b)(5). In the instant case, debts exceed the assets by a ratio in excess of three to one. Since Butler was an unsecured creditor, it is probable that it would have received nothing.

Butler argues that a preferential transfer did not occur because the transfer did not involve property in which Debtor had an interest. 11 U.S.C. § 547(b). In this regard Butler relies on the Consignment Agreement which provided that title to the property would remain in Butler. The Court first notes that an interest in property under the Bankruptcy Code includes "anything of value which has debt-paying or debt-securing power." 4 *Collier on Bankruptcy* § 547.08(2) (15th ed. 1985) (citations omitted).

■ Furthermore, under section 2326 of the Pennsylvania Uniform Commercial Code, all reasonable doubts regarding the nature of the transaction are to be resolved in favor of Debtor's general creditors. *See* 13 Pa. C.S.A. § 2326, Comment 2. In addition, reservations of title in consignment agreements do not control the rights of general creditors in situations such as the one at hand when Debtor, at its place of business, deals in goods of the kind involved. *Id.*

In opposing the Trustee's petition, Butler places great reliance on section 2326 of the Pennsylvania Uniform Commercial Code in 13 Pa. C.S.A. § 2326. Section 2326 provides, in pertinent part:

(b) *Rights of creditors of buyer generally.* Except as provided in subsection (c), goods held on approval are not subject to the claims of the creditors of the buyer until acceptance; goods held on sale or return are subject to such claims while in the possession of the buyer.

(c) *Consignment sales.* Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of

creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this subsection is not applicable if the person making delivery:

(1) complies with an applicable law providing for the interest of a consignor or the like to be evidenced by a sign;

(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others; or

(3) complies with the filing provisions of Division 9 (relating to secured transactions). 13 Pa. C.S.A. § 2326(b),(c).

The parties stipulated that Butler's interest was not evidenced by a notice or sign at Debtor's place of business, and that Butler failed to comply with the filing provisions of Division 9 as provided by subsection (c)(1) and (3), *supra.* Therefore, the only question is whether Butler has sustained its burden of proof that Debtor was generally known by its creditors to be substantially engaged in selling the goods of others. 13 Pa. C.S.A. § 2326(c)(2).

■ According to Debtor's schedules, Debtor has thirty-nine unsecured creditors. The testimony detailed in findings of fact numbered 12 and 13 establishes that only eleven percent in amount of the Debtor's unsecured creditors and five percent in number of these creditors knew that the Debtor was substantially engaged in selling the goods of others. The Court finds, as a matter of law, that these percentages are insufficient to establish that the Debtor was *generally* known by its creditors to be substantially engaged in selling the goods of others.

Butler also contends that the Trustee is not entitled to recover the merchandise or its value because the merchandise was not

**184**

in the possession of the Debtor at the time the bankruptcy case commenced. The Court notes that one of the fundamental policies of the Bankruptcy Code, and particularly of Section 547, is to insure an equal distribution among creditors. This policy would be negated if Butler were permitted to take the lion's share of the Debtor's assets on the eleventh hour prior to the filing, thereby leaving little or nothing for other unsecured creditors.

In summary, the Court finds that Butler failed to perfect its interest pursuant to § 2326(c)(1) and (3) of the Pennsylvania Uniform Commercial Code, and failed to meet its burden of proof under subsection (c)(2) of that section. Butler cannot be permitted to defeat both the purposes of the Bankruptcy Code and the Pennsylvania Uniform Commercial Code. Therefore, the relief sought by the Trustee will be granted.

An appropriate Order will be entered.