In re FLO–LIZER, INC., Debtor.

CIBA–GEIGY CORP., Plaintiff,

v.

FLO–LIZER, INC., et al., Defendants.

**Bankruptcy No. 2–86–01685.**
**Adv. No. 2–86–0096.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

May 1, 1989.

John C. Deal, Emens, Hurd, Kegler & Ritter, Columbus, Ohio, for CIBA–Geigy Corp.

James R. Patterson, Schottenstein, Zox & Dunn, Columbus, Ohio, for Flo–Lizer, Inc.

Michelle Sutter, Baker & Hostetler, Columbus, Ohio, for Official Committee of Unsecured Creditors.

Leonard Carlson, Smith & Schnacke, Columbus, Ohio, for Banque Paribas.

Jeffrey C. Steen, Sidney and Austin, Chicago, Ill., for Banque Paribas.

### OPINION AND ORDER ON PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT

DONALD E. CALHOUN, Jr.,
Bankruptcy Judge.

This matter is before the Court on the complaint of CIBA–Geigy, the plaintiff herein, seeking a judgment finding that certain goods located on the premises of Flo–Lizer, Inc., a defendant in this case, are not subject to the bankruptcy estate of Flo–Lizer. The issues raised by this complaint were heard by the Court on January

14 and 15, 1988, following which the Court took the matter under advisement.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(B). The following opinion and order constitutes findings of fact and conclusions of law.

CIBA–Geigy is a manufacturer of various chemical products, including agricultural herbicides which are the type of goods in contest here. Flo–Lizer was in the business of selling agricultural supplies primarily to farming customers. KOVA, Inc. is a distributor, acting as a middleman between CIBA–Geigy and Flo–Lizer. Both CIBA–Geigy and KOVA employed salespersons whose objective was to encourage Flo–Lizer to buy chemicals manufactured by CIBA–Geigy through KOVA. In the transaction which is the subject of this case, Flo–Lizer agreed to receive bulk quantities of herbicides manufactured by CIBA–Geigy through KOVA the distributor.

Prior to January 1986, Flo–Lizer calculated a quantity of herbicides which it felt certain could be sold in the growing season of 1986. It notified KOVA of that quantity. In January and February of 1986, approximately $500,000 worth of herbicides were delivered by CIBA–Geigy into sealed chemical tanks located on four separate locations of the defendant. The bills of lading covering these goods indicated that the goods were sold to KOVA and delivered to CIBA–Geigy itself, in care of Flo–Lizer. CIBA–Geigy filed UCC–1 financing statements covering all of these shipments, listing KOVA as the debtor in these statements.

On April 30, 1986, Flo–Lizer filed for protection under Chapter 11, Title 11 of the United States Code. Pursuant to a stipulation and order of this Court entered on June 3, 1987, the defendant removed all of the chemicals from the sealed tanks on June 4, 1987.

In this adversary proceeding, CIBA–Geigy prays that the Court find that the goods in question are not the property of the bankruptcy estate, but of either itself or KOVA the distributor. CIBA–Geigy relies on the underlying sales agreement between itself, KOVA and Flo–Lizer. CIBA–Geigy asserts that pursuant to that agreement, Flo–Lizer at no time had legal title nor authority to take legal title. Flo–Lizer is claiming that as a matter of prior dealings between itself and KOVA, it took the proper actions required to secure legal title, and in the alternative that the arrangement was a consignment, designed for sale or return and subject to the guidance of Ohio Revised Code Ann. § 1302.39 (UCC § 2–326).

In debtor-creditor law, there has always existed a basic problem concerning a seller's right to reclaim goods delivered to an unpaying buyer. The problem becomes further complicated when the buyer becomes insolvent and seeks protection under the United States Bankruptcy Code. When the buyer/debtor is transformed into a debtor-in-possession, the seller is particularly vulnerable, because the law seeks to also protect any innocent third-party creditors who may have relied on the apparent inventory of the debtor.

Sellers and creditors have devised various legal theories to protect their interests in such goods, including factor liens, conditional sales and entrustments, but the underlying problem of deceiving other creditors of the debtor survives these theories. The Uniform Commercial Code, which has in large part been adopted in Ohio attempts to give all parties in such situations, methods to protect themselves in the event of legal complications. For unknown reasons, sellers and creditors are still inventing new legal theories, which in part seek to circumvent the requirements of the UCC.

In the instant case, CIBA–Geigy has asserted that the goods in question were delivered to themselves. Since these goods were delivered to themselves, CIBA–Geigy argues that Flo–Lizer had no express authority to sell the goods, and the Ohio statutes embodying the UCC are inapplicable. The situation involved here is hardly new. The essence of the problem caused

by this situation was addressed in 1812 when a court stated:

"... if a person authorize another to assume the apparent right of disposing of property in the ordinary course of the trade, it must be presumed that the apparent authority is the real authority ... if the principal send his commodity to a place where it is the ordinary business of the person to whom it is confided to sell, it must be intended that the commodity was sent thither for the purpose of sale." *Pickering v. Busk*, 104 Eng.Rep. 758 (1812).

■ This early decision recognized that regardless of title, and whether actual authority to sell existed, if the seller's delivery of goods creates an apparent authority to sell, the law will recognize that there was an intent for the goods to be sold by the seller. This interpretation rests not on the power granted by the seller, but the appearance caused by the seller, and is an interpretation that has been carried forward to the present. A recent district court decision has adopted this view, holding that actual authority to sell goods does not control where sellers assert their rights in goods delivered to potential buyers. In *B.F.C. Chemicals v. Smith Douglas, Inc.*, 46 B.R. 1009 (E.D.N.C.1985) the court found that notwithstanding a requirement that a buyer seek permission from the seller before withdrawal of the goods, delivery of the goods to a buyer that deals in such goods is a delivery for sale or return, which is addressed in UCC § 2–326.

■ CIBA–Geigy in the instant case asserts that since Flo–Lizer had no actual authority to sell the goods, there was no delivery for sale or return, and Ohio Rev. Code Ann. § 1302.39 (UCC § 2–326) does not apply. This assumes that Ohio Rev. Code Ann. § 1302.39 implies an authority to sell requirement. The relevant portion of Ohio Rev.Code Ann. § 1302.39 reads:

(c) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business, the goods are deemed to be on sale or return. The provisions of this division are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this division is not applicable if the person making delivery:

(1) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(3) complies with the filing provisions of sections 1309.01 to 1309.50, inclusive, of the Revised Code.

It is the opinion of this Court that the reasoning in *B.F.C. Chemicals* embodies the intent of the UCC as adopted in Ohio, that being that no actual authority to sell requirement exists in Ohio Rev.Code Ann. § 1302.39 (UCC § 2–326). The statute was designed to protect third-party creditors of the debtor, and whether the debtor had actual authority to sell the goods is irrelevant. To hold that Ohio Rev.Code Ann. § 1302.39 (UCC § 2–326) did require an actual authority to sell would place an undue burden on creditors of the debtor to uncover secret arrangements made by sellers and buyers of inventory.

CIBA–Geigy asserts that the purpose of the delivery was not for the sale of goods, but for warehousing needs of CIBA–Geigy. The facts do not bear this out. First, CIBA–Geigy employed sales persons that encouraged Flo–Lizer to receive goods. If the arrangement were purely warehousing, one would assume Flo–Lizer would lobby CIBA–Geigy for their warehousing needs, not vice-versa. Secondly, the quantity delivered to Flo–Lizer was not determined by the warehousing needs of CIBA–Geigy, but the sales needs of Flo–Lizer. When CIBA–Geigy ships the amount of goods that Flo–Lizer calculates it can sell, the shipment appears to the world to be for sale. CIBA–Geigy also points out that a warehousing

fee was paid to Flo–Lizer. This fee amounted to not more than a sales incentive, for it was testified at trial that the fee payment would continue even after CIBA–Geigy would have considered the goods sold. For the aforementioned reasons, this Court deems that the goods delivered to Flo–Lizer were for sale.

CIBA–Geigy also argues that the goods were not delivered to Flo–Lizer but to themselves. It is difficult to accept this position. The goods were delivered to defendant's physical locations of business and put into chemical tanks owned by the defendant. CIBA–Geigy at the last hour claims that the bills of lading should control to whom delivery was made under Ohio Rev.Code Ann. § 1302.49 (UCC § 2–505). The difficulty with this proposition is that this section was designed to delineate controversies between a buyer and seller only. CIBA–Geigy is no longer in conflict with Flo–Lizer, but with Flo–Lizer as debtor-in-possession, a different legal entity. The comments to ORC § 1302.49 (UCC § 2–505) suggest that this section is of little authority when applied to third parties. This court is of the opinion that notwithstanding the bills of lading, the goods were delivered to Flo–Lizer.

The plaintiff asserts that per the case of *Medomak Canning Co. v. William Underwood Co. (In re Medomak Canning Co.)* 25 UCC Rep.Serv. 437 (Bankr.D.Me.1977), aff'd 588 F.2d 818 (1st Cir.1978), a meeting of the minds is required to establish a sales contract. The court in *Medomak* ruled that inventory used by the buyer for further processing in manufacturing were not delivered for sale, as the language of UCC § 2–326 requires. Although the court in *Medomak* felt that third-party creditors of the debtor should have access to any inventory of the debtor, it ruled strictly that inventory for manufacturing process was not for sale per UCC § 2–326. As indicated earlier, this Court believes the goods delivered by CIBA–Geigy were for sale. When CIBA–Geigy delivered the goods to Flo–Lizer, the objective view of a third-party creditor would be that the goods were delivered for sale, and whether CIBA–Geigy will admit to a meeting of the minds is

irrelevant. Since *Medomak* dealt with goods that were for manufacturing process and not for sale, it is inapposite to the case at hand.

CIBA–Geigy also proffers the case of *Walter F. Heller & Co. Southeast v. Riviana*, 648 F.2d 1059 (5th Cir.1981). The court in *Heller* held that goods delivered to a third-party warehouse for storage did not come within the reach of UCC § 2–326. In the instant case, the goods were delivered to Flo–Lizer's place of business, not a third-party warehouse. Although CIBA–Geigy has asserted that the goods were delivered to its distributor KOVA, the actual delivery was made to Flo–Lizer and the bills of lading show CIBA–Geigy as the "ship to" party, in care of Flo–Lizer. Because in fact the goods were not shipped to a third-party, *Heller* is not relevant in this proceeding.

For similar reasons, the case of *Data General Corp. v. Still (In re Ault)* 6 B.R. 58 (Bankr.E.D.Tenn.1980) is also unpersuasive, for the debtor in *Data General* never had actual possession. The case of *Argus Mgt. Corp. v. The Pillsbury Co., (In re Hillcrest Foods, Inc.)* 40 B.R. 360 (Bankr. D.Me.1984) dealt with carrier negligence under a negotiable bill of lading, and is similarly unpersuasive.

This Court is of the opinion that the course of dealings between CIBA–Geigy and Flo–Lizer fits squarely under Ohio Rev.Code Ann. § 1302.39 (UCC § 2–326). CIBA–Geigy delivered goods to Flo–Lizer for sale, and Flo–Lizer dealt in such goods under a name other than that of CIBA–Geigy. When these facts are discovered, it is irrelevant what the parties wish to title the arrangement, whether it be a consignment, distributor agreement, or bulk sales arrangement. In this situation, a third-party creditor could be misled into believing the goods were proper inventory of the debtor.

Since Ohio Rev.Code Ann. § 1302.39(C) is applicable, and CIBA–Geigy did not show that it deserved protection under Section (C)(1) through (3), Section (B) instructs us that the goods which are contested in this proceeding are subject to the claim of the

creditors of the estate of the debtor-in-possession.

If the Court were to rule for the CIBA–Geigy, the ruling would effectively emasculate the UCC. State legislatures would be forced to play tag with sellers, by having to draft new legislation each time parties invent a new legal fiction intended to avoid the requirements of the UCC as adopted by Ohio. This Court agrees with the reasoning in *In re Alsop*, 20 B.R. 627 (Bankr.S.D. Ohio 1982) which states that the policy behind Ohio Rev.Code Ann. § 1302.39(C) is that the ultimate liability should vest with the party who has permitted the appearance of ostensible ownership to take place without notice to the creditors.

As to Flo–Lizer's motion for leave to amend the pleadings, this Court believes that no evidence was shown at trial to support the claim that Flo–Lizer was deprived of the use and benefit of the goods in question, during the time period stated. Rule 15(b) of the Federal Rules of Civil Procedure does permit amendments to the pleadings to conform to the evidence, but only when the facts and issues relevant to the proffered amendment were raised by express or implied consent at trial. It is the opinion of this court that the issue raised by Flo–Lizer in its motion for leave to amend raises additional facts that were not brought out at trial, and therefore to allow such amendment would prejudice CIBA–Geigy.

On the basis of the foregoing findings of fact and conclusions of law, it is the opinion of the Court that the goods in issue are property of the estate. Flo–Lizer's motion to amend the pleadings is DENIED.

IT IS SO ORDERED.

### JUDGMENT ENTRY

In accordance with the opinion and order entered in this matter on the complaint of CIBA–Geigy Corporation, plaintiff herein, judgment is hereby rendered in favor of the defendants, and against the plaintiff.

IT IS SO ORDERED.