In re Julius Dudley FISHER a/k/a Jud Fisher d/b/a Kingston Lee Furriers, Debtor.

Thomas C. SCOTT, Trustee in Bankruptcy for Julius Dudley Fisher, Plaintiff,

v.

ALMIRO FUR FASHION DESIGN, Defendant.

Bankruptcy No. 2–85–00644.
Adv. No. 2–86–0057.

United States Bankruptcy Court, S.D. Ohio, E.D.

June 1, 1989.

Amended July 28, 1989.*

Robert H. Farber, Jr., Columbus, Ohio, for defendant.

Charles M. Caldwell, Columbus, Ohio, Asst. U.S. Trustee.

Thomas C. Scott, Thompson, Hine & Flory, Columbus, Ohio, trustee.

* The Order amending this opinion is published at 101 B.R. 507.

## 352

### OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

R. GUY COLE, Jr., Bankruptcy Judge.

#### I. *Preliminary Statement*

This matter is before the Court upon the Motion for Summary Judgment filed by the plaintiff, Thomas C. Scott, Trustee ("Trustee"), and the memorandum in opposition thereto of defendant, Almiro Fur Fashion Design ("Almiro"). The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1) and (2)(F).

The procedural posture of this adversary proceeding is somewhat muddled. Initially, Almiro filed a motion for summary judgment which was based upon an unverified "affidavit" of its counsel, Robert H. Farber, Jr. ("Farber"). This so-called "affidavit" does not contain competent evidence derived from Farber's personal knowledge. Rather, the "affidavit" merely recites various self-serving legal conclusions which purportedly establish a basis for summary judgment. The Trustee filed a memorandum in opposition to Almiro's summary judgment motion which challenges the sufficiency of Farber's "affidavit." Subsequently, the Trustee filed his motion for summary judgment which is now pending before the Court. Asserting the existence of material issues of fact, Almiro opposes the Trustee's request for summary judgment. Accordingly, while Almiro originally filed a summary judgment motion, it now submits material issues of fact exist which preclude disposition of this case by way of summary judgment. The Court will therefore deem Almiro's initial request for summary judgment to have been withdrawn. As a result, this matter is not before the Court on cross motions for summary judgment—*i.e.,* where the parties agree that no factual dispute exists and each argue for judgment as a matter of law. Instead, the instant motion for summary judgment is opposed by Almiro due to the alleged existence of genuine issues of material fact which require adjudication at trial.

#### II. *Statement of Uncontested Facts*

Based upon the pleadings, Almiro's responses to interrogatories and the affidavits of the Trustee and Julius Dudley Fisher, the debtor in the Chapter 7 case of *In re Fisher,* Case No. 2–85–00644 ("Debtor") and the former owner and operator of Kingston Lee Furriers,[1] the following uncontested facts may be derived:

(1) On or about December 12, 1984, Almiro shipped what the Trustee has described as a "gray flannel black cross mink coat" (the "Gray Mink") and a "natural ranch mink coat" (the "Natural Mink"), having approximate wholesale values of $3,295 and $3,500, respectively, to Debtor. The Gray and the Natural Minks were returned to Almiro by the Debtor on December 18, 1984;

(2) On December 17, 1984, Almiro shipped what the Trustee denominated as a "steel blue black cross mink coat" (the "Blue Mink"), with an approximate wholesale value of $2,995 to the Debtor. The Blue Mink was transferred by Debtor back to Almiro on December 19, 1984;

(3) The minks received by Debtor (collectively, the "Minks") were to be sold on consignment—*i.e.,* if the goods received were sold, Debtor was to remit a portion of the sale proceeds back to Almiro in payment of the goods. Unsold goods could be returned to Almiro for credit;

(4) Almiro arranged for the delivery of the Minks to the Debtor;

(5) Debtor's business regularly dealt in the type of goods delivered—*i.e.,* fur garments and related items;

(6) Almiro did not take a security interest in any of the Minks shipped to Debtor; and

(7) Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 7, 1985.

#### III. *Arguments of the Parties*

The issue before the Court for decision is whether the Debtor's return of the Minks

---

1. Debtor and Kingston Lee Furriers are hereinafter collectively referred to as "Debtor."

to Almiro within the ninety days preceding his bankruptcy filing constitutes an avoidable preference within the meaning of 11 U.S.C. § 547(b). According to the Trustee, the transfers of the Minks satisfy each and every element of 11 U.S.C. § 547(b) and, therefore, such transfers may be avoided. In response, Almiro submits that it was not a creditor of the Debtor. And, no transfer of property of the Debtor was made, Almiro argues, inasmuch as Debtor had no property interest in the Minks to transfer. This argument is premised upon Almiro's contention that the shipments of the Minks "were not for the purpose of transferring property, but for the sole purpose of consigning the goods to the Debtor for *inspection only.*" Memorandum Contra Motion for Summary Judgment at 1. Finally, Almiro raises two additional arguments in opposition to the Trustee's summary judgment motion: (1) Even if the transactions in question satisfy the elements of 11 U.S.C. § 547(b), the "contemporaneous-exchange" and "ordinary-course-of-business" exceptions of 11 U.S.C. § 547(c)(1)[2] and (2)[3] preclude avoidance of the transfers; and (2) Because Debtor had possession of the Minks for no more than six days, it would be inequitable to hold that the subject transfers are avoidable.

The arguments of the parties shall be analyzed below.

### IV. *Legal Discussion*

Section 547(b) of the Bankruptcy Code provides in relevant part as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ...

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). As the discussion below demonstrates, each element of § 547(b) of the Code has been established; hence, the transfers of the Minks are subject to avoidance. Almiro's arguments to the contrary—that it was not a creditor of Debtor and that no transfer of a property interest was made because Debtor had no property interest in the Minks to transfer—are not well-taken.

### *Transfer of an Interest of the Debtor in Property*

■ To establish that a transfer constitutes an avoidable preference, the threshold requirement of a transfer of an interest of the debtor in property must be met. "Transfer" is defined in 11 U.S.C. § 101(50) as "every mode direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...." In re-

---

**2.** Section 547(c)(1) of the Bankruptcy Code states:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;....

**3.** 11 U.S.C. § 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer—

....

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;....

turning the Minks to Almiro, Debtor obviously physically parted with the property in question. The dispute here centers upon whether Debtor possessed a transferable property interest in the Minks. According to Almiro, because the Minks were transferred on a consignment basis, for inspection only, Debtor never obtained a transferable property interest in the Minks. This argument ignores Ohio law. Debtor's affidavit, as well as Almiro's interrogatory answers, establish that the Minks were shipped to the Debtor to be sold on consignment. Because the Minks were delivered to Debtor primarily for resale, and the Debtor could return the Minks to Almiro for credit even if the Minks conformed to the contract, pursuant to Ohio law, this transaction would be classified as a "sale or return." Ohio Revised Code ("O.R.C.") 1302.39(A)(2). Under O.R.C. § 1302.39(B), goods held on a "sale or return" basis are subject to the claims of the buyer's creditors while in the buyer's possession unless compliance with one of the provisions of O.R.C. § 1302.39(C) is demonstrated. Absent such a showing, then, the Minks were subject to the claims of Debtor's creditors while in his possession and must be deemed to be "property" of the Debtor within the meaning of 11 U.S.C. § 547(b). *Loeb v. G.A. Gertmenian & Sons (In re A. J. Nichols, Ltd.),* 21 B.R. 612, 614–15 (Bankr. N.D.Ga.1982); *Makoroff v. Butler Tire Center (Matter of Castle Tire Center, Inc.),* 56 B.R. 180, 183 (Bankr.W.D.Pa. 1986).

Under O.R.C. § 1302.39(C), goods held on "sale or return" are subject to the claims of the buyer's creditors while they are in the buyer's possession, unless the seller of such goods does one of the following:

(1) complies with an applicable state law providing for a consigner's interest to be evidenced by a sign;

(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others; or

(3) complies with the filing requirements of the Revised Code (O.R.C. §§ 1309.01–1309.50).

Almiro's failure to comply with any of the requirements of O.R.C. § 1302.39(C) is clear as a matter of fact and law. Ohio has no applicable law providing for a consigner's interest to be evidenced by a sign. And, Almiro does not assert that Debtor was generally known by his creditors to be substantially engaged in the sale of goods of others. Finally, Almiro's failure to file financing statements with respect to the Minks is likewise undisputed. Hence, the relationship between Almiro and the Debtor is not that of consigner-consignee under Ohio law. Rather, the transaction was a "sale or return" within the meaning of O.R.C. § 1302.39(A)(2) and, pursuant to O.R.C. § 1302.39(B), the Minks were subject to the claims of Debtor's creditors while in Debtor's possession. It follows, therefore, that under Ohio law Debtor possessed a transferable property interest in the Minks for purposes of 11 U.S.C. § 547(b). Thus, the initial element of an avoidable transfer—transfer of an interest of the Debtor in property—has been established. *See In re A.J. Nichols, Ltd.,* 21 B.R. at 614–16; *Matter of Castle Tire Center, Inc.,* 56 B.R. at 182–84.

### Transfer To or For the Benefit of A Creditor

■ According to Almiro, it was not a creditor of the Debtor during the preference period. Hence, Almiro asserts, the Trustee cannot meet the requirement of 11 U.S.C. § 547(b)(1). This contention is without merit. Under 11 U.S.C. § 101(9), a "creditor" is an "entity that has a claim against a debtor that arose at the time of or before the order for relief concerning the debtor." A "claim" is a "right to payment or a right to an equitable remedy." 11 U.S.C. § 101(4). Here, Debtor had the obligation to either return the Minks or to pay for the merchandise. Put differently, Almiro had a right to payment for the Minks or to an equitable remedy for their return. Accordingly, Almiro was a creditor as defined in 11 U.S.C. § 101(9) and the transfers in question were to or for Almiro's benefit within the meaning of 11 U.S. C. § 547(b)(1).

### Transfer For or On Account of An Antecedent Debt

The transfers of the Minks from Debtor to Almiro were "for or on account of an antecedent debt owed by the Debtor before such transfer[s] ... [were] made." 11 U.S.C. § 547(b)(2). Debt is defined by 11 U.S.C. § 101(11) as "liability on a claim." As noted above, Almiro is a creditor of the Debtor because Debtor had the obligation to either pay for the Minks or return them to Almiro. By the same reckoning, the transfers in question clearly were made on account of claims owed by Debtor to Almiro before such transfers were made.

### Transfers Were Made When the Debtor Was Insolvent

The third element of a preferential transfer is set forth in § 547(b)(3) of the Code: the transfer must be made while the Debtor was insolvent. Section 547(f) of the Bankruptcy Code creates the presumption that a debtor is insolvent for the ninety days preceding the petition date. This places the burden of going forward with evidence of the debtor's solvency on the recipient of the alleged preferential transfer. Here, Almiro has offered no evidence, by affidavit or otherwise, to overcome the statutory presumption of insolvency established by 11 U.S.C. § 547(f). Hence, the Court finds that Debtor was insolvent at the time of the transfer of the Minks.

### Transfers Were Made During the Ninety Days Before the Date of Filing of the Petition

The invoices attached to the Trustee's summary judgment motion as well as Almiro's interrogatory answers establish that the transfers of the Minks occurred during the ninety days immediately preceding the petition date.

### The Transfer Enabled Almiro to Receive More Than It Would Have Received Under a Chapter 7 Liquidation

■ The final element which must be shown to establish a preferential transfer is Almiro's receipt of more than it would have received had no transfer taken place and its claim was provided for pursuant to the distributive scheme of the Bankruptcy Code. 11 U.S.C. § 547(b)(5). The affidavit of the Trustee establishes that there will be insufficient assets in the estate for payment of a 100% dividend to general unsecured claimholders. Because the transfer of the Minks permitted Almiro to recover the entire amount of its claim, and because it did not have a perfected security interest in the Minks, Almiro received more by virtue of the transfers than it would have under a Chapter 7 liquidation.

■ Having determined that the transfers of the Minks meet all the elements of a preference under 11 U.S.C. § 547(b), the Court will turn to the remaining arguments asserted by Almiro in opposition to the summary judgment motion. According to Almiro, even if the transfers in question are found to be preferential, they are excepted from avoidance by the contemporaneous-exchange and/or ordinary-course-of-business exceptions of § 547(c)(1) and (c)(2) of the Bankruptcy Code. This argument may be disposed of summarily. By invoking the contemporaneous-exchange and ordinary-course-of-business exceptions of § 547(c)(1) and (c)(2) of the Bankruptcy Code, Almiro has raised affirmative defenses. Pursuant to Bankruptcy Rule ("B.R.") 7008(c), a party pleading to a preceding pleading, must set forth affirmatively any matter constituting an avoidance or an affirmative defense. Failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case. *See, Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1215 (6th Cir.1987) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1278, at 339 (1969)); 2A J. Moore, *Moore's Federal Practice* ¶ 8.27[3] at 8–182 to 8–193 (1987). The contemporaneous-exchange and ordinary-course-of-business exceptions of § 547(c)(1) and (2), Almiro argues, do not constitute affirmative defenses, but mere "exceptions" to the Trustee's avoiding power. Hence, its failure to plead these affirmative defenses in answer to the Trustee's complaint does not constitute a waiver, Almiro asserts. This argument is not com-

pelling. While B.R. 7008(c) sets forth a list of matters constituting avoidances or affirmative defenses, the enumeration therein is not exclusive. Any matter that does not tend to contravert the opposing party's *prima facie* case as determined by applicable substantive law should be pleaded as an affirmative defense, and is not put in issue by a denial made pursuant to Fed.R.Civ.P. 8(b). *See, Railway Express Agency v. Mallory,* 168 F.2d 426 (5th Cir.1948); 2A J. Moore, *Moore's Federal Practice* ¶ 8.27[3] at 8–182 (1987). Under substantive bankruptcy law, 11 U.S.C. § 547(c) "is never called into play unless a preference is found to exist...." *Waldschmidt v. Ranier (In re Fulghum Construction Corp.),* 14 B.R. 293, 306 (M.D.Tenn.1981), *aff'd. in part and vacated and remanded in part on other grounds,* 706 F.2d 171 (6th Cir. 1983). It is clear, then, that the exceptions to avoidability listed in 11 U.S.C. § 547(c) are in the nature of affirmative defenses and must be affirmatively pleaded or waived. To suggest that the defenses contained in § 547(c) of the Bankruptcy Code are mere "exceptions" as opposed to affirmative defenses is an argument premised more on semantics than substance. *Cf. First National Bank of Lincolnwood v. Keller,* 318 F.Supp. 339, 345 (E.D.Ill. 1970) (defendant's reliance upon exception to the National Banking Act was waived by its failure to plead it in his answer inasmuch as exception is "matter constituting an avoidance or affirmative defense" within the meaning of Federal Rule of Civil Procedure 8(c)).

Finally, Almiro cites the inequitable result which would flow from finding the transfers of the Minks to be avoidable preferences. The premise of Almiro's argument is faulty. Simply because the Minks were in Debtor's possession for a relatively short time period, it does not necessarily follow that the Trustee's avoidance of the transfers and ultimate recovery from Almiro is an inequitable result. Judge Calhoun recently rejected a similar argument of a creditor who likewise failed to comply with the Uniform Commercial Code ("U.C.C.") provisions pertaining to consignments enacted by the Ohio legislature. *See CIBA–*

*Geigy Corp. v. Flo–Lizer, Inc. (In re Flo–Lizer, Inc.),* 100 B.R. 341 (Bankr.S.D.Ohio 1989). Recognizing the commercial and societal interests served by the U.C.C.'s consignment rules, the court stated as follows:

> Since [O.R.C.] section 1302.39(C) is applicable and CIBA–Geigy did not show that it deserved protection under section (C)(1) through (C)(3), section (B) instructs us that the goods which are contested in this proceeding are subject to the claim of the creditors of the estate of the debtor-in-possession.
>
> If the court were to rule for CIBA–Geigy, the ruling would effectively emasculate the U.C.C. State legislatures would be forced to play tag with sellers, by having to draft new legislation each time parties invent a new legal fiction intended to avoid requirements of the U.C.C. as adopted by Ohio. This court agrees with the reasoning in *In re Alsop,* 20 B.R. 627 (Bankr.S.D.Ohio 1982) which states that the policy behind [O.R.C.] § 1302.39(C) is that the ultimate liability should vest with the party who has permitted the appearance of ostensible ownership to take place without notice to creditors.

*In re Flo–Lizer, Inc.,* 100 B.R. 344–45. Judge Calhoun's observation is equally applicable here. It was Almiro's failure to comply with the U.C.C. provisions adopted by the Ohio legislature which has led to the avoidability of the transfers in question. Thus, contrary to Almiro's protestations, the Trustee's preference recovery against it does no violence to equitable principles.

■ Even if the Court were convinced that, as Almiro asserts, recovery of the preferential transfers by the Trustee would be inequitable, it simply is not empowered to fashion a remedy which ignores the plain provisions of both the Bankruptcy Code and Ohio law. The Supreme Court's decision in *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 969–70, 99 L.Ed.2d 169 (1988) counsels against a bankruptcy court's creation of rights not otherwise available under the Bankruptcy Code through resort to its equitable powers. *See also Southern Railway Company v.*

*Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir.1985) ("[11 U.S.C.] § 105(a) does not authorize the bankruptcy court to create rights not otherwise available under applicable law"). As the Supreme Court noted in *Ahlers,* a bankruptcy court is limited to enforcing rights under the statute through the exercise of equitable powers founded on the bankruptcy law itself. *Id.* It would certainly be inappropriate, therefore, for the Court to deny the Trustee the preference recovery to which he is entitled under the rubric of preventing an "inequitable" result.

Based upon the foregoing, the motion for summary judgment filed by the Trustee shall be GRANTED.

IT IS SO ORDERED.

### JUDGMENT ENTRY

Judgment in the above captioned adversary proceeding is hereby entered in favor of the Trustee and against Defendant in the amount of $13,205, plus interest at the legal rate and costs, pursuant to an opinion and order dated June 1, 1989.

IT IS SO ORDERED.