In re VOGUE COACH COMPANY, Debtor.

INDEPENDENCE NISSAN, INC., Plaintiff,

v.

VOGUE COACH COMPANY and Ernest Fourman, Defendants.

Bankruptcy No. 90–03427–C.
Adv. No. 90–0343–C.

United States Bankruptcy Court, N.D. Oklahoma.

Oct. 16, 1991.

G. Rudy Hiersche, Jr., Oklahoma City, Okl., for plaintiff.

Gary D. Hammond, Tulsa, Okl., for defendants.

## MEMORANDUM OPINION AND DECISION

STEPHEN J. COVEY, Chief Judge.

This matter comes before the Court upon the Motion for Summary Judgment filed by Judi E. Beaumont, Trustee ("Trustee"), for Vogue Coach Company. Granting of this motion is appropriate, if, from the attached affidavits and depositions, there is no dis-

pute as to the material facts and if the moving party is entitled to a judgment based upon applicable law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## PLEADINGS

Vogue Coach Company ("Debtor") filed for Chapter 7 bankruptcy relief on November 7, 1990. Independence Nissan, Inc. ("Nissan") filed this adversary proceeding on November 27, 1990, against Trustee and Ernest Fourman ("Fourman") asking that three Recreational Vehicles ("RVs") be declared their property. The Trustee counterclaimed against Nissan denying its claim and alleging these three RVs had been transferred by the Debtor to Nissan within a week of the bankruptcy filing and asking that they be returned pursuant to § 547 of the Bankruptcy Code as avoidable preferences. Fourman was later dismissed from the proceeding as a party defendant.

## UNDISPUTED FACTS

In late March, 1990, the Debtor and Nissan entered into an oral contract immediately after the Debtor moved its business from California to Pryor, Oklahoma. The basic agreement provided that Nissan would deliver twelve RVs to the Debtor for the purpose of resale. These RVs were to be placed on Debtor's property in time for the grand opening of the Debtor's business. The RVs the Debtor received were to be sold at a fixed sales price and the Debtor was to remit the appropriate funds to Nissan. The Debtor had the right to return any unsold RVs. Nissan never filed a financing statement perfecting its interest in the RVs pursuant to 12A O.S. § 2-326.[1]

From March 1990 until August 1990, Debtor sold nine of the twelve RVs and paid Nissan the proper amount within two weeks of each sale. The evidence reveals a course of business or a pattern between Debtor and Nissan. However, this pattern was interrupted on August 13, 1990, when Debtor sold and delivered an RV to Fourman and did not pay Nissan the necessary proceeds from the sale. Instead, an agreement was made whereby an RV (the "Blue RV"), owned by the Debtor, was given to Nissan in lieu of the proceeds from the Fourman sale. This Blue RV remained on the Debtor's lot with the remaining two unsold RVs.

Nissan repossessed the three RVs by agreement of the parties on or about October 31, 1990, approximately one week before bankruptcy. The Trustee attacks the transfer of these three RVs as a preferential transfer pursuant to 11 U.S.C. § 547(b).

## CONCLUSIONS OF LAW

To avoid a transfer of a debtor, the Trustee must satisfy each of the elements of 11 U.S.C. § 547(b) which states, in part, as follows:

(b) [T]he trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

---

1.     (1) ..., if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is ...
    (b) a "sale or return" if the goods are delivered primarily for resale.....
    (3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, *then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return.* The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum". However, this subsection is not applicable if the person making delivery
    (a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or
    (b) establishes that the person conducting the business is generally known by this creditors to be substantially engaged in selling the goods of others, or
    (c) complies with the filing provisions of the Articles on Secured Transactions (Article 9). (Emphasis added).

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the filing of the petition; or

\* \* \* \* \* \*

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

\* \* \* \* \* \*

■ The first element of an avoidable preference is that the debtor must have *transferred an interest in property*. Section 101(54) of the Bankruptcy Code defines transfer as follows:

Every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

This broad definition includes even a transfer of mere possession. In 4 *Collier on Bankruptcy* ¶ 547.03, at 547–17 (15th ed. 1991) the author states as follows:

This definition "is as broad as possible."

Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody or control even if there is no transfer of title, because possession, custody, and control are interests in property (footnote omitted).

The Court finds a transfer occurred when Nissan repossessed the RVs one week prior to bankruptcy.

This transfer, however, is preferential only if the Debtor transferred an interest in its property. Since the term "interest of the debtor in property" is not defined in the Bankruptcy Code, one must look to state law to ascertain if the Debtor had an interest in the property transferred. 4 *Collier on Bankruptcy* ¶ 547.03, at 547–23 (15th ed. 1991).

The fundamental inquiry is whether the transfer diminished or depleted the debtor's estate....

Essentially, the transfer must diminish directly or indirectly the fund to which creditors of the same class can legally resort for the payment of their debts, to such an extent that it is impossible for other creditors of the same class to obtain as great a percentage as the favored one.

4 *Collier on Bankruptcy* ¶ 547.03, at 547–24 and 547–26 (15th ed. 1991). See also *In re Hartley*, 825 F.2d 1067 (6th Cir.1987).

■ Under the agreement, the Debtor had a right to sell the RVs and remit the proceeds to Nissan or return the unsold RVs. Nissan did not file a financing statement perfecting its interest in the RVs, there is no signage law in Oklahoma, and finally, the Debtor was not known to engage in consignment transactions. Therefore, under 12A O.S. § 2–326 (see Footnote 1), the RVs were treated as being on "sale or return" and subject to the claims of the Debtor's creditors. The filing of the financing statement was the only way Nissan could perfect its interest against creditors of the Debtor and the Trustee.

The Oklahoma Supreme Court has held that under a "sale or return" contract, title to the property vests in the buyer until it is returned to the seller. See *Hales v. Henry Black, Limited*, 264 P.2d 355 (Okla.1953) and *Johnson v. Curlee Clothing Co.*, 112 Okl. 220, 240 P. 632 (1925). Also under Oklahoma Statute 12A § 2–236(b) the risk of loss in a "sale or return" is in the buyer until the goods are returned. See also 67 AM.JUR.2D *Sales*, § 472, p. 732 (1985) where the author states:

Under the Uniform Commercial Code, in the "sale or return" transaction, the contract is at an end when the buyer returns the goods. However, title vests in the buyer in the "sale" part of the transaction under the same circumstances as if there were an outright sale with no "return" feature. But the buyer may revest title in the seller by returning the goods within the time fixed by the contract or, if no time has been fixed, within a reasonable time (footnote omitted).

Since title to the RVs was in the Debtor, if the RVs had not been repossessed, they would have been property of the estate subject to the claims of the creditors. Nissan cannot better its position by repossessing within ninety days of bankruptcy. The transfer of the RVs diminished or depleted the property available for creditors by putting title back in Nissan and, therefore, a transfer of an interest of the Debtor in property occurred.

■ The next element of a preferential transfer is the transfer must be to or for the benefit of a creditor on an antecedent debt.[2] Nissan had a claim against Debtor and Debtor owed a debt to Nissan which arose at the time of the delivery of the twelve RVs in March 1990. The claim and debt consisted of Nissan's right to payment for sold RVs or return of the unsold RVs. Thus, a debtor-creditor relationship arose between the parties in March 1990. Because title to the RVs vested in the Debtor upon delivery, the return of the RVs was a transfer for the benefit of a creditor on account of an antecedent debt. See, 4 *Collier on Bankruptcy* ¶ 547.05, at 547–35 to 547–37 (15th ed. 1991) where the author stated as follows:

> Section 547(b)(2) specifically provides that the trustee may avoid any transfer of an interest of the debtor in property "for or on account of an antecedent debt owed by the debtor before such transfer was made." Although "antecedent debt" is not defined by the Code, essentially a debt is "antecedent" if it is incurred before the transfer.

See also *Matter of CHG Intern, Inc.*, 897 F.2d 1479 (9th Cir.1990) where the court stated:

> Whether a debt is current or antecedent depends upon when it was in-

curred, a term which is not defined by the Bankruptcy Code. A debt is incurred when the debtor first becomes legally bound to pay. *In re Gold Coast Seed Co.*, 751 F.2d 1118, 1119 (9th Cir.1985) (debt under forward contract to purchase seed from creditor was incurred upon shipment of the seed). This is generally when "the debtor obtains a property interest in the consideration exchanged giving rise to the debt."

See also *First Federal of Michigan v. Barrow*, 878 F.2d 912 (6th Cir.1989).

The next element is that the transfer must have been made while the Debtor was insolvent. Section 547(f) clearly states that

> The Debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

This presumption of insolvency was not rebutted by Nissan and the Court, therefore, finds the Debtor was insolvent at the time of the transfer.

■ The Trustee must also prove the creditor received more than it would have received under a Chapter 7 liquidation. The transfer of the Blue RV and the remaining two RVs permitted Nissan to recover the total value of its claim. Because Nissan did not have a perfected interest in the RVs, Nissan received more than it would have under a Chapter 7 liquidation which would only pay a small percentage to unsecured creditors.

In its defense, Nissan has raised two provisions of § 547(c) which create affirmative defenses to claims of preferences. These two defenses are known as the "contemporaneous exchange defense" and "ordinary course of business defense."

---

**2.** The Bankruptcy Code defines creditor, claim and debt as follows:

§ 101(10)(A) a creditor is an entity that has a claim against a debtor ...

§ 101(5) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

§ 101(12) debt means liability on a claim.

■ Section 547(c) which provides for the "contemporaneous exchange defense" states as follows:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

In order for the "contemporaneous exchange defense" to occur, the defendant must give new value to the Debtor at the time of the transfer and the transfers must be substantially contemporaneous. Neither of these elements are met in the present case. "New value" is defined in § 547(a)(2) of the Bankruptcy Code in part as follows:

(2) "new value" means money or money's worth in goods, services, or new credit, ...

At the time the Debtor transferred the three RVs to Nissan, Nissan did not transfer any money or money's worth in goods and services or new credit to the Debtor. Nissan simply repossessed the RVs. Additionally, the exchange was not substantially contemporaneous. The RVs were transferred to the Debtor in March of 1990 and transferred back to Nissan in October of 1990. The "contemporaneous exchange defense" has no merit. 4 *Collier on Bankruptcy* ¶ 547.09, 547–44. *In re George Rodman, Inc.*, 792 F.2d 125 (10th Cir.1986) and *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153 (D.C.Cir.1986).

■ Section § 547(c)(2)(A), (B) and (C) sets forth the requirements of the "ordinary course of business defense" as follows:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

The ordinary course of business defense was discussed in *In re Magic Circle Energy Corp.*, 64 B.R. 269, 273 (Bankr. W.D.Okla.1986). In this case, the court stated:

... the cornerstone of this element of a preference defense is that the creditor needs to demonstrate some consistency with the other business transactions between the debtor an the creditor.

4 *Collier on Bankruptcy* ¶ 547.10, 547–50 as follows:

Those courts testing a transfer for "ordinariness" under section 547(c)(2) have generally focused on the prior conduct of the parties, the common industry practice, and, particularly, whether payment resulted from any unusual action by either the debtor or creditor (footnote omitted).

See also *Fidelity Sav. & Inv. Co. v. New Hope Baptist*, 880 F.2d 1172 (10th Cir.1989) and *In re Yurika Foods Corp.*, 888 F.2d 42 (6th Cir.1989).

The ordinary course of dealings between the parties was the delivery of twelve RVs, the sale of nine RVs, and the remittal of the proceeds. The return of the three RVs one week before bankruptcy is not consistent with other business transactions between Nissan and the Debtor. The ordinary course of business was to sell and remit proceeds. It was out of the "ordinary course of business" to return the RVs to Nissan. It was particularly out of the "ordinary course of business" for the Debtor not to pay the proceeds from the Fourman sale to Nissan, but to transfer to Nissan the Blue RV instead.

Also, in regard to these two defenses, Nissan must in its response to the Debtor's Motion for Summary Judgment, bring forth facts, by affidavit or deposition, supporting them. Nissan has failed to do this,

but has, instead, made general allegations that the RVs were returned in the ordinary course of business and that the exchanges were contemporaneous. This is not sufficient.

Pursuant to § 547(g), the trustee has the burden of proving the basic elements of a preference under § 547(b) and Nissan has the burden of proving any affirmative defense under § 547(c). The Trustee has met her burden by attaching to the Motion for Summary Judgment the necessary depositions and affidavits. Nissan has brought forward no such evidence tending to prove its two defenses.

It is well settled in summary judgment law that a "party opposing a properly supported motion may not rest upon mere allegations or denials of his pleadings," but must affirmatively prove specific facts showing there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to a material fact." *Matsushita v. Zenith*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

█ Finally, Nissan contends that according to the certificates of title, it was the owner of the three RVs. This is irrelevant. In *Al's Auto Sales v. Moskowitz*, 224 P.2d 588 (Okla.1950) the court stated:

... certificate of title ... is not a muniment of title which establishes ownership, but is merely intended to protect the public against theft and to facilitate recovery of stolen automobiles and otherwise aid the state in enforcement of its regulation of motor vehicles.

A certificate of title does not establish ownership of or title to the vehicle, but is merely intended to protect the public against theft.

The case of *In re Fisher*, 100 B.R. 351 (Bankr.S.D.Ohio 1989), deals with a "sale or return" situation that is analogous to the case at hand. *Fisher* came before that court on the trustee's motion for summary judgment. Here the defendant shipped the debtor several mink coats which were to be sold on consignment. If the goods were sold, the debtor was to remit a portion of the sale proceeds back to the defendant. Unsold goods could be returned. The debtor, in fact, returned these coats within a week. The defendant had never filed a financing statement on the coats. Several months later, the debtor filed for bankruptcy. The trustee claimed the return of the coats was an avoidable preference pursuant to § 547(b). The court rejected the defendant's argument that it was not a creditor and that no transfer of a property interest had occurred. The designation of the transaction as a "sale or return" caused the transfer to be subject to the claims of creditors under Ohio's Uniform Commercial Code ("UCC") because the defendant did not comply with the appropriate UCC exceptions. The court concluded the transfer of the minks met all the requirements of an avoidable preference. For other cases reaching the same conclusion on the same facts see *Matter of Castle Tire Center, Inc.*, 56 B.R. 180 (Bankr. W.D.Pa.1986) and *In re A.J. Nichols, Ltd.*, 21 B.R. 612 (Bankr.N.D.Ga.1982).

The Court will enter a separate order consistent with this Memorandum Opinion and Decision finding the transfer of the RVs constituted an avoidable preference and will order the return of the RVs to the Trustee.