**EAGLE BOATS, LIMITED and William Seebold, Plaintiffs/Appellants,**

v.

**CONTINENTAL INSURANCE COMPANY MARINE OFFICE OF AMERICA, CORPORATION, Defendant/Respondent.**

No. 73002.

Missouri Court of Appeals, Eastern District, Division Two.

May 5, 1998.

F. Douglas O'Leary, St. Louis, for appellants.

Ronald E. Fox, Stephen P. Niemira, St. Louis, for respondent.

CRANE, Presiding Judge.

Plaintiffs, a boat manufacturer and its corporate president, brought an action against defendant insurer to recover damages for breach of a boat dealers policy of insurance and vexatious refusal to pay. Plaintiffs had sought coverage for losses sustained when a customer's boat was stolen while plaintiffs were transporting it to another town to be photographed for a magazine article. We affirm the trial court's entry of summary judgment in insurer's favor because, at the time the boat was stolen, it was not "entrusted to the insured for sale" as that phrase is used in the coverage clause of the policy and therefore, was not covered property.

The parties have stipulated to the facts in this case as follows. In the spring of 1991, plaintiff William Seebold, president of plaintiff Eagle Boats, Ltd., a Missouri corporation [1] engaged in manufacturing recreational motorboats, was approached by the magazine "Trailer Boats" about doing a promotional article on a Seebold Eagle motorboat. At that time, a 1991 Seebold Eagle 265 limited edition motorboat, which Hoppies Village Marina, Inc. (Hoppies) had purchased from Eagle Boats in February, 1991, was undergoing minor paint repairs at Eagle Boats. Because he was interested in promoting Seebold Eagle motorboats, Seebold called Hoppies and sought permission to transport Hoppies's boat and trailer to Ketchum, Oklahoma, for the magazine photoshoot. Hoppies agreed, providing that, after the photo-shoot, Seebold would return the boat and trailer to Hoppies's marina.

On April 10, 1991 Seebold left St. Louis for Ketchum in a truck owned by Eagle Boats, towing the boat and its trailer. That evening Seebold arrived at a motel near Ketchum. Seebold parked the truck, boat, and trailer in the motel's parking lot, ate dinner, and retired for the night. He did not lock or

---

1. Eagle Boats, Ltd., was dissolved in July, 1993.

otherwise secure the trailer to the truck. Either late that night or early the next morning, the boat and trailer were stolen and never recovered.

Hoppies recovered the losses it suffered as a result of the theft from its insurance company, the Institute of London Underwriters (Underwriters). Underwriters then filed a subrogation action under a bailment theory against Eagle Boats and Seebold individually in federal district court in November, 1992. A default judgment was entered against Eagle Boats and a judgment was entered against Seebold in the amount $60,632.08, plus interest.[2]

Seebold and Eagle Boats sought coverage under a boat dealers policy held in the name of Eagle Boats and issued by Continental Insurance Company Marine Office of America, Corporation (Continental). The policy insured the covered property against "all risks of direct physical loss or damage," except for certain listed exclusions. The property covered was described in Section 3 of the policy as follows:

> To cover on all private pleasure type boats, inboard motor boats, sailboats, outboard motor boats, motors and boat trailers, and marine supplies, owned or controlled by the insured for the purpose of sale only, or owned by others and entrusted to the insured for sale, for which the insured may be held legally responsible.

Thereafter, Seebold and Eagle Boats (hereinafter collectively referred to as plaintiffs) filed an action against Continental to recover damages for breach of the insurance policy and vexatious refusal to pay. The parties filed cross motions for summary judgment and a stipulation of facts. The trial court entered summary judgment in Continental's favor. Plaintiffs appeal from this judgment.

In their first point on appeal, plaintiffs contend that the trial court erred in sustaining Continental's motion for summary judgment for several reasons. They first assert that there is coverage under the policy. They also argue that no exclusion to coverage applies, that collateral estoppel does not bar this action, and that Seebold has standing to bring the action. Because we find that there is no coverage under the policy, we do not reach the remaining contentions.

■■■ Plaintiffs argue that the stolen boat and trailer were covered because they constituted a boat and boat trailer "owned by others and entrusted to the insured for sale." Plaintiffs contend that the phrase "for sale" can mean "for the insured's sales activities" or "sales purposes" which would include transporting the boat to be photographed for a promotional article which could result in the insured selling other similar boats. The term "for sale," as used in the coverage clause, is unambiguous and does not encompass a boat used in the insured's sales activities but which is not in the insured's possession to sell. The boat was not for sale. An ambiguity arises in a contract where there is duplicity, indistinctness, or uncertainty in the meaning of the words contained in the contract. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992). Language is ambiguous if, when viewed in the meaning that would ordinarily be understood by the laypeople who bought the policy, it is reasonably open to different constructions. *Id.* The mere fact that the parties disagree over the meaning of the policy does not create an ambiguity. *Sanders v. Wallace*, 884 S.W.2d 300, 302 (Mo.App.1994). Where the policy language is unambiguous, the rules of construction do not apply, and absent public policy to the contrary, we will enforce the policy as written. *Krombach*, 827 S.W.2d at 210. We will not create ambiguities to distort the language of unambiguous policies. *Id.*

■ In this insurance contract the words "for sale" cannot be viewed in isolation but must be considered in the context in which they are used. The policy covers boats "entrusted to the insured for sale." When personal property is "entrusted" to another for some purpose a bailment is created. *Glenshaw Glass Co. v. Ontario Grape Growers' Marketing Bd.*, 67 F.3d 470, 475 (3rd Cir. 1995). " 'Entrustment' clearly suggests the existence of a consensual bailment situation

**2.** *Institute of London Underwriters v. Eagle Boats, Ltd.*, 918 F.Supp. 297 (E.D.Mo.1996).

where the person delivering the property expects the person to whom possession is delivered to use the property for the purpose intended by the owner and stated by the recipient." *Imperial Ins. Co. v. Ellington,* 498 S.W.2d 368, 372 (Tex.Civ.App.1973) (citing *David R. Balogh, Inc. v. Pennsylvania Millers Mut. Fire Ins. Co.,* 307 F.2d 894, 896 (5th Cir.1962)). *See also Temple v. McCaughen & Burr, Inc.,* 839 S.W.2d 322, 326 (Mo.App.1992); *Mock v. Missouri Union Ins. Co.,* 328 S.W.2d 61, 63 (Mo.App.1959) (defining bailment).

■■■ Here the coverage was only for property "entrusted to the insured for sale." A consignment is a type of bailment where the goods are entrusted for sale. *Glenshaw Glass Co.,* 67 F.3d at 475. *See also Armor All Prods. v. Amoco Oil Co.,* 194 Wis.2d 35, 533 N.W.2d 720, 725 (1995). Thus, property "entrusted to the insured for sale" is property consigned to the insured, where the purpose of the bailment is the sale of that property.

While the word "sale" can describe a variety of sales transactions, it always contemplates the exchange or opportunity or offer to exchange goods for a price or other consideration. *See, e.g.,* Webster's New World Dictionary (1974). *See also* Section 400.2–106(1) RSMo (1994) of the Uniform Commercial Code, which provides: "A 'sale' consists in the passing of title from the seller to the buyer for a price."

■■■ In this case the words "entrusted to the insured for sale" are not ambiguous and clearly provide coverage to a boat which is in the insured's possession in order to sell that boat. This language cannot be interpreted to cover a boat which is in the insured's possession, not to sell, but to take to a photo-shoot. That the photo-shoot was designed to encourage future sales of similar motor boats is irrelevant. The Hoppies boat on which coverage is sought was not for sale and was not delivered to plaintiffs to sell. Hoppies specifically directed that the boat and trailer be returned to its marina after the photo-shoot. The policy did not cover a boat entrusted to the insured for purposes other than the sale of that boat. The trial court did not err in entering summary judgment in defendant's favor.

For their second point plaintiffs contend that the court erred in denying their motion for summary judgment. Generally, the denial of a motion for summary judgment is not an appealable order. *Lake Center Boatworks, Inc. v. Martin,* 804 S.W.2d 842, 844 (Mo.App.1991). This rule equally applies where the order denying summary judgment to one party is entered at the same time as an appealable order granting summary judgment to the other party. *Id.* at 844. This point is thus not reviewable. Further, the issue is moot as a result of our disposition of point one. Point two is denied.

The judgment of the trial court is affirmed.

RHODES RUSSELL and JAMES R. DOWD, JJ., concur.