## In re GREENLINE EQUIPMENT, INC.

### Automotive Finance Corporation, Plaintiff,

v.

Greenline Equipment, Inc.; Bank of Vernon; John Deere Credit; Foster Brothers Equipment Co., Inc.; Empire Transportation, Inc.; and Unknown Alleged Consignors 1–99, Defendants.

Bankruptcy No. 03–15350–DWH.
Adversary No. 05–1076–DWH.

United States Bankruptcy Court, N.D. Mississippi.

June 5, 2008.

---

Bradley T. Golmon, Oxford, MS, for Plaintiff.

Craig M. Geno, Harris Jernigan & Geno, PLLC, Ridgeland, MS, E. Franklin Childress, Jr., Memphis, TN, John S. Hill, Tupelo, MS, Rosamond H. Posey, Oxford, MS, for Defendants.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is the complaint filed by the plaintiff, Automotive Finance Corporation, (Automotive Finance); answer and affirmative defenses to said complaint having been filed by the defendant, Foster Brothers Equipment Co., Inc., (Foster Brothers); on proof in open court; and the court, having heard and considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (K), and (O).

### II.

The above captioned debtor, Greenline Equipment, Inc., (Greenline), filed its voluntary petition pursuant to Chapter 11 of the United States Bankruptcy Code on August 25, 2003. On February 28, 2005, the Chapter 11 case was converted to Chapter 7. On March 25, 2005, Automotive Finance filed a complaint to determine the validity, priority, and extent of its lien as to the proceeds acquired from the conversion, sale, or liquidation of Greenline's inventory.

There is no dispute that Automotive Finance held a security interest in the inventory of Greenline. In its complaint against Foster Brothers, Automotive Finance contends that this security interest captured certain equipment that Foster Brothers delivered to the Greenline premises. Essentially, Automotive Finance asserts that the equipment was delivered by Foster Brothers to Greenline on a consignment

basis which would generally allow the security interest to attach, but this is disputed by Foster Brothers which insists that the equipment was only stored on the Greenline premises for convenience purposes on a temporary basis. Automotive Finance also alleges that the removal and liquidation of the equipment by Foster Brothers constitutes a conversion making Foster Brothers liable to Automotive Finance for the value of the equipment converted.

In the pre-trial order, entered by the court in this adversary proceeding, Automotive Finance and Foster Brothers stipulated to the following facts, to-wit:

a. At all relevant times AFC had on file a UCC–1 Financing Statement perfecting its security interest in certain inventory of Greenline.

b. Foster Brothers had no financing statement on file regarding its equipment stored on property controlled by Greenline.

c. On August 25, 2003, Greenline filed a voluntary petition for relief pursuant to Chapter 11, Title 11 of the United States Code, which was subsequently converted to a Chapter 7 proceeding.

d. On October 10, 2003, a Post–Petition Financing Order was entered by the court in this proceeding.

e. On or about February 17, 2005, AFC representatives photographed the following pieces of equipment owned by Foster Brothers located at property controlled by Greenline:

1. A John Deere AMT 600;
2. A 580C Case;
3. A 5310 John Deere tractor;
4. A 335 John Deere baler;
5. A John Deere gator;
6. A 1518 John Deere rotary cutter;
7. A 950 John Deere tractor; and
8. An 8040 traverse lift.

f. Greenline had in its possession blank Foster Brothers' invoices.

g. Foster Brothers paid Greenline a commission on any sale of Foster Brothers' equipment in which Greenline participated.

h. The 5310 John Deere and the 950 John Deere tractor identified in paragraph 8(e) were sold from property controlled by Greenline.

i. The other equipment identified in paragraph 8(e) was removed by Foster Brothers from the property controlled by Greenline.

j. Foster Brothers stored other equipment from time to time at property controlled by Greenline.

k. Other equipment owned by Foster Brothers that may have been stored at property controlled by Greenline after August 25, 2003, include the following:

1. A 1981 Case 580D backhoe;
2. A 1995 JCB 506 Telahandler;
3. A 1993 KW Day Cab truck;
4. A 1980 4840 John Deere;
5. A 1982 4840 John Deere;
6. A 1974 4230 John Deere;
7. A 6610 Ford with boom mower; and
8. A 32 foot goose neck trailer.

l. AFC did not provide floor plan financing to Greenline or otherwise extend credit to Greenline in regard to the equipment identified in paragraph 8(e).

The sixteen items of equipment, listed in subparagraphs e. and k., immediately hereinabove, are further discussed in greater detail on Exhibit D–38, specifically the disposition of each item. When examined about this exhibit in open court, Ed-

ward Andrews, the Automotive Finance Branch Manager, acknowledged that Automotive Finance did not rely on items 1–8 on page 1 of Exhibit D–38 when extending credit to Greenline, that items 1, 2, and 4 on page 2 of Exhibit D–38 were not in a saleable condition, as well as, that items 5–8 on page 2 were foreclosed by Automotive Finance rather than being repossessed by Foster Brothers. Item 3 on page 2 was actually owned by Greenline and floor planned by Automotive Finance. This item was not claimed by Foster Brothers nor was it ever removed by Foster Brothers from the Greenline premises. It had been purchased by Foster Brothers for Greenline on December 9, 2004, and the purchase price was reimbursed by Greenline to Foster Brothers after Greenline sold it to Gene Perry on December 31, 2004.

As to the items on Exhibit D–38, the primary question for the court to determine is whether these items were delivered to Greenline by Foster Brothers on a consignment basis for sale or whether they were simply stored temporarily on the Greenline premises as a matter of convenience.

### III.

Miss.Code Ann. § 75–9–102(a)(20) defines "consignment" as a transaction by which a person delivers goods to a merchant for the purpose of sale, and the merchant (1) deals in goods of that kind under a name other than the name of the person making delivery, (2) is not an auctioneer, and (3) is not generally known by its creditors to be substantially engaged in selling the goods of others.

As noted hereinabove, Automotive Finance contends that its security interest attached to the items of equipment listed on Exhibit D–38, because they became a part of Greenline's "inventory." This, in turn, would necessitate that these items of equipment were transferred by Foster Brothers to Greenline by sale or by some other means for the purpose of sale or lease. Miss.Code Ann. § 75–9–102(a)(48) contains a very specific definition of "inventory," to-wit:

> Goods, other than farm products, which: (A) are leased by a person as lessor; (B) are held by a person for sale or lease to be furnished under a contract of service; (C) are furnished by a person under a contract of service; or (D) consist of raw materials, work in process, or materials used or consumed in business.

Simply delivering goods does not mean that they are delivered for sale. The Fifth Circuit has distinguished bailments from sales, stating that "the test of a bailment is that the identical thing is to be returned in the same or in some altered form; if another thing of equal value is to be returned, the transaction is a sale." *Guidry v. Continental Oil Co.*, 350 F.2d 342, 345 n. 10 (5th Cir.1965) *citing* Black's Law Dictionary 185 (3rd ed.1933). All bailments are not consignments. *Glenshaw Glass Co. v. Ontario Grape Growers' Mkt. Bd.*, 67 F.3d 470, 475 (3rd Cir.1995). A temporary entrustment of possession by a bailor, without more, is not a sale on consignment. *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 98 (1st Cir.1993); *In re Zwagerman*, 115 B.R. 540 (Bankr.W.D.Mich.1990); *Walter E. Heller & Co. v. Riviana Foods, Inc.*, 648 F.2d 1059 (5th Cir.1981).

In order for the delivery of the subject items of equipment by Foster Brothers to Greenline to be considered a consignment, the delivery must have been "for the purpose of sale." If the intention was for the identical thing to be returned in the same or some altered form, it was a bailment, not a consignment.

## IV.

The testimony of Joseph Daniel Foster, the owner of Foster Brothers, was not substantively contradicted. Foster testified that Foster Brothers' principal place of business was located in Huntingdon, Tennessee. A large portion of Foster Brothers' business was the sale of used farm equipment that it purchased from public and private auctions, many of which were conducted in the states of Alabama and Mississippi. Foster and Rivers Dickerson, the owner of Greenline, had a long standing personal and professional relationship. There were occasions when Foster Brothers purchased more equipment than it could transport to its headquarters in Tennessee. On these occasions, Foster Brothers would deliver the excess equipment to the Greenline premises in Columbus, Mississippi, as a matter of convenience for temporary storage. Foster Brothers would thereafter make arrangements to have this equipment transported to its headquarters or to another auction lot.

Foster's testimony was corroborated by the deposition testimony of Rivers Dickerson as evidenced by the following excerpt:

Q. And with this document, what you are doing is telling AFC that these pieces of equipment are not yours?

A. That's right.

Q. But they belong to Foster?

A. That's right.

Q. And that Foster's leaving them there as it says, for display until shipment?

A. Right.

Deposition of Rivers Dickerson, p. 71, lines 12–20.

Foster testified that on infrequent occasions, a third party might make inquiry about purchasing an item of the Foster Brothers equipment that was stored at the Greenline lot. When that happened, Foster would be contacted by a Greenline representative, and Foster would determine the sales price. Foster indicated at trial that two pieces of Foster Brothers equipment had been sold while stored at Greenline-a John Deere 5310 tractor on which Greenline received a sales commission and a John Deere 950 tractor on which no commission was paid. Foster explained that these were sales made by Foster Brothers, not Greenline, and the sales proceeds were paid to Foster Brothers. No sale of Foster Brothers equipment occurred without the direct involvement and approval of Foster.

In contrast to the above arrangement, Foster testified that on a few occasions he purchased equipment from Greenline that was actually owned by a third party. Since this was apparently a consignment arrangement between the third party and Greenline, Foster paid Greenline directly who then remitted to the third party owner.

Automotive Finance obviously knew that Greenline was engaged in the selling the property of third parties. Edward Andrews, mentioned hereinabove, the Automotive Finance Branch Manager, testified that he was aware of this fact both at trial and during the Rule 30(b)(6) deposition of Automotive Finance, page 25, lines 3–6.

There is no doubt that Automotive Finance knew that the items of equipment identified on page 1 of Exhibit D–38 were owned by Foster Brothers. Automotive Finance's Exhibit P–5 identifies this equipment as being:

"Stored on 2225 Highway 45
Belonging to Foster Brothers
Display til shipment"

Andrews explained the purpose of Exhibit P–5 in the aforementioned Rule 30(b)(6) deposition, page 31, line 7–10, to

the effect that the Exhibit was, "... to advise AFC that these ten pieces of equipment are being stored on the referenced lot and that those pieces of equipment belong to Foster Brothers and that they are to be displayed until further shipment."

As to items 1, 2, and 4 on page 2 of Exhibit D–38, the items in a non-saleable condition, it was undisputed that these items were stored at an off-site lot, rather than on Greenline's primary facility. They were delivered by Foster Brothers to Greenline for the same reason as all of the other items-for temporary storage and convenience. However, these items were included erroneously in Automotive Finance's floor plan as a result of forged bills of sale prepared and executed by Rivers Dickerson.

### V.

The Mississippi statutory definition of consignment contemplates that the goods in question must be delivered to a merchant for the purpose of sale, and the merchant must not generally be known by its creditors to be substantially engaged in the selling of the goods of others. While the proof presented has not established that Greenline was "substantially" engaged in selling the goods of others, the proof is undisputed that Automotive Finance knew that equipment owned by Foster Brothers was being stored at Greenline until further shipment. More importantly, the predominant weight of the evidence establishes that the items of equipment in question were not delivered to Greenline by Foster Brothers for the purpose of sale. The two sales that materialized were simply incidental and, indeed, were not consignment sales. They were sales made by Foster Brothers, not Greenline. The evidence convinces this court that the items of equipment were merely stored by Foster Brothers on the Greenline premises on a temporary basis for convenience purposes. At best, the arrangement was that of a bailment. As noted hereinabove, the temporary entrustment of possession by a bailor, without more, is not a consignment within the meaning of the Mississippi Code definition.

For the reasons set forth herein, the court is of the opinion that the complaint filed by Automotive Finance is not well taken. It will be dismissed with prejudice by a separate order to be entered contemporaneously herewith. All costs accrued by virtue of this proceeding are to be taxed to Automotive Finance.